Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW COHEN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>OMAHA STEAKS INTERNATIONAL, LLC and OMAHASTEAKS.COM, LLC.<br><br>*Defendants*. | Case No. 4:26-cv-01061<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## Table of Contents

I. Introduction. 1
II. Parties. 4
III. Jurisdiction and Venue. 4
IV. Facts. 4
A. Defendant's fake sales and discounts. 4
B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts. 16
C. Defendant's advertisements are unfair, deceptive, and unlawful. 21
D. Defendant's advertisements harm consumers. 22
E. Plaintiff was misled by Defendant's misrepresentations. 23
F. Defendant breached its contract with and warranties to Plaintiff and the putative Class. 26
G. No adequate remedy at law. 27
V. Class Action Allegations 28
VI. Claims. 29
First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq. 29
Second Cause of Action: Violation of California's Consumer Legal Remedies Act 31
Third Cause of Action: Violation of California's Unfair Competition Law 33
Fourth Cause of Action: Breach of Contract 35
Fifth Cause of Action: Breach of Express Warranty 36
Sixth Cause of Action: Quasi-Contract/Unjust Enrichment 37
Seventh Cause of Action: Negligent Misrepresentation 37
Eighth Cause of Action: Intentional Misrepresentation 38
VII. Relief. 39

**I. Introduction.**

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Omaha Steaks International, LLC and OmahaSteaks.com, LLC. (collectively, "Defendant" or "Omaha Steaks") manufactures, markets, and sells Omaha Steaks-branded products, including steaks, meat, seafood, and some prepared foods, through the Omaha Steaks website, www.omahasteaks.com ("Omaha Steaks Products" or "Products").

9. Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. Defendant consistently promotes "50% Off Sitewide" with a constant stream of promotions. As soon as one ends, the next one immediately begins. Here are some examples:



10. Defendant also consistently advertises its Products with strikethrough pricing, displaying a purported discount price alongside the purported regular price appearing in strikethrough font, like the following:




11. As described in greater detail below, after reviewing Defendant's website, www.omahasteaks.com, and seeing and relying on advertised sales, Plaintiff bought a Product from Defendant. When Plaintiff made his purchase, Defendant advertised that a purported sale was going on, and Plaintiff believed that he was being offered a steep discount from the purported regular price that Defendant advertised. And based on Defendant's representations, Plaintiff believed that he was purchasing a Product whose regular price and market value were the purported list price that Defendant advertised, that he was receiving a substantial discount, and that the opportunity to get this discount was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendant.

12. The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells its Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like him would not have purchased the Products, or would have paid less for them.

13. Plaintiff bring this case for himself and other customers who purchased Omaha Steaks Products from Defendant.

## II. Parties.

14. Plaintiff Andrew Cohen is domiciled in Hercules, California.

15. The proposed Class includes citizens of California.

16. Omaha Steaks International, LLC is a Delaware limited liability company that maintains its principal place of business at 11030 "O" Street, Omaha, Nebraska 68137. It was formed on or around October 26, 2023 as the successor-in-interest to Omaha Steaks International Inc., and continues the same business operations, branding, marketing practices, and conduct as Omaha Steaks International Inc. OmahaSteaks.com, LLC is a Delaware limited liability company that also maintains its principal place of business at 11030 "O" Street, Omaha, Nebraska 68137. Omaha Steaks International, LLC and OmahaSteaks.com, LLC are collectively referred to herein as “Omaha Steaks” or “Defendant.”

## III. Jurisdiction and Venue.

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendant.

18. The Court has personal jurisdiction over Defendant because Defendant sold Omaha Steaks Products to consumers in California, including to Plaintiff.

19. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Omaha Steaks Products to consumers in California and this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant’s conduct giving rise to the claims occurred in this District, including Defendant’s sale to Plaintiff.

## IV. Facts.

### A. Defendant’s fake sales and discounts.

20. Defendant Omaha Steaks manufactures, markets, and sells Omaha Steaks-branded products, including steaks, meat, seafood, and some prepared foods, including through the Omaha Steaks website, www.omahasteaks.com (“Omaha Steaks Products” or “Products”).

21. Defendant creates the false impression that its Products' regular prices are higher than they truly are.

22. At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts almost always offer "50% Off" the listed regular prices that Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant claims they are limited time. Defendant changes the names of its various promotions but the discounts offered are consistently available. Here are some of the promotions that Defendant runs on its webpage:




23. In addition to the attention-grabbing banners like those shown above, Defendant lists the discount prices for its Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided below and on the following pages:




*Captured March 31, 2022*




*Captured August 14, 2022*




*Captured April 3, 2023*




*Captured November 5, 2025*

24. Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, in January and February 2025, Defendant was offering an "End of Season Sale" with a "50% OFF Sitewide" promotion:




*Captured January 2, 2025; January 16, 2025; February 4, 2025; and February 20, 2025*

25. To reasonable consumers, this means that shortly after the season ends (here, Winter), Defendant's Products will no longer be on sale and will retail at their purported regular prices. But Defendant's sales do not end, and the purported regular prices do not return.

26. Instead, Defendant keeps offering the discount pricing and simply changes the name of the sale. For example, after enough time has passed so that an "End of Season" sale no longer makes sense, Defendant simply changed the name of the promotion. In this case, Defendant changed it to "Semi-Annual Sale." But the sale remained the same. It included the same "50% OFF Sitewide" promotion:




*Captured March 13, 2025; March 26, 2025*

27. Then, after the "Semi-Annual Sale" concluded, Defendant's Products did not return to their purported regular list prices. Instead, Defendant simply changed the name of the promotion again, this time to the "Spring Savings" sale. And again, the sale remained the same: "50% OFF Sitewide":




*Captured April 9, 2025; April 24, 2025*

28. Then, when enough time passed so that a "Spring Savings" sale no longer made sense, Defendant removed the "Spring Savings" descriptor, but kept the same "50% OFF Sitewide" promotion:




*Captured May 1, 2025*

29. Defendant next advertised its sale as the "Memorial Day Sale," which then became the "Father's Day" sale, which then became the "4th of July Sale," which became the "Blazing Hot Sale," which then became the "Anniversary Sale," which then became the "Labor Day Sale," which then became another "Semi-Annual Sale," which then returned back to another "End of Season Sale." But regardless of the sales' name, they all offer the same "50% OFF Sitewide" discount. Throughout the year, and year after year, Defendant repeats this cycle of constant promotions.

30. Using these tactics, Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but, as shown above, they continue constantly, and are continuously replaced by similar sales. The list (or strike-through) prices Defendant advertises are not

actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

31. To confirm that Defendant consistently offers discounts off purported regular prices that are automatically applied to all orders, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[1] and screen captures from the www.omahasteaks.com website. That investigation confirms that Defendant's sales have persisted continuously. For example, 94 screenshots of Defendant's website, www.omahasteaks.com, were captured on the Wayback Machine, from dates between January 2022 and December 2025. This includes screenshots captured on January 7, 2022; January 11, 2022; February 7, 2022; February 15, 2022; March 11, 2022; March 31, 2022; April 2, 2022; April 19, 2022; May 19, 2022; May 30, 2022; June 8, 2022; June 23, 2022; July 7, 2022; July 23, 2022; August 14, 2022; August 29, 2022; September 11, 2022; September 24, 2022; October 2, 2022; October 28, 2022; November 11, 2022; November 26, 2022; December 13, 2022; December 29, 2022; January 3, 2023; January 19, 2023; February 11, 2023; February 26, 2023; March 8, 2023; March 23, 2023; April 3, 2023; April 18, 2023; May 6, 2023; May 21, 2023; June 5, 2023; June 18, 2023; July 14, 2023; July 30, 2023; August 5, 2023; August 19, 2023; September 14, 2023; September 30, 2023; October 10 2023; October 26, 2023; November 12, 2023; November 28, 2023; December 4, 2023; December 19, 2023; January 3, 2024; January 17, 2024; February 9, 2024; February 24, 2024; March 14, 2024; March 28, 2024; April 10, 2024; April 29, 2024; May 11, 2024; May 24, 2024; June 4, 2024; June 22, 2024; July 14, 2024; July 28, 2024; August 12, 2024; August, 24, 2024; September 10, 2024; September 22, 2024; October 6, 2022; October 29, 2024; November 14, 2024; November 29, 2024; December 9, 2024; December 24, 2024; January 2, 2025; January 16, 2025; February 4, 2025; February 20, 2025; March 13, 2025; March 26, 2025; April 9, 2025; April 24, 2025; May 1, 2025; May 18, 2025; June 13, 2025; June 23, 2025; July 13, 2025; July 18, 2025;

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

August 11, 2025; August 24, 2025; October 15, 2025; October 17, 2025; November 5, 2025; November 15, 2025; December 11, 2025; and December 28, 2025.

32. Of the 94 randomly selected screenshots of Defendant's website captured on the Wayback Machine, all 94 (i.e. one hundred percent) displayed a purportedly time-limited discount on Defendant's Products. Omaha Steak's promotions run continuously, and its discounts are effectively permanent.

33. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sales are not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

34. In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts throughout the purchasing process.

35. As an illustrative example, on November 5, 2025, while running its "Semi-Annual Sale 50% OFF Sitewide" promotion, Defendant's homepage listed Products with their fake regular prices (in strikethrough format) alongside their fake discounted price. And the fake prices and fake discounts are repeated in substantially the same format throughout the purchasing process. For example, after clicking on "Steaks," the "Steaks" category of the Products page includes the same fake pricing scheme:




*Captured November 5, 2025*

36. And, once a particular Product is selected, the Cart page repeats the same fake prices and fake discounts in substantially the same format. For example, after selecting a "Steak Essentials Pack" for purchase, the Cart page appears like this:







*Captured November 5, 2025*

37. But the truth is, the listed regular price of $354.95 for the "Steak Essentials Pack" that appears on Omaha Steak's homepage, Product page, and Cart page, is not its regular price. Instead, the purported regular price is much lower, because Defendant regularly offers steep sitewide discounts on all of its Products. As a result, Defendant's customers did not receive a true 50% off discount. They received a much lower discount, or no discount at all.

38. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

39. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

40. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market values of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant almost always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the

Products, because Defendant's Products are almost always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are always available.

**B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

41. As explained above, Defendant sells its Omaha Steaks Products through its website, www.omahasteaks.com. Some Omaha Steaks Products are also available through a small number of third-party websites and retailers, including Amazon, Walmart and Target.

42. But regardless of where these Products are sold, they are consistently sold at prices well below the listed regular prices on Defendant's website. As an illustrative example, on January 23, 2026, Omaha Steaks advertised its Deluxe Classic Collection with a discounted price of $109.99 and a regular list price of $240.94:




*Captured January 23, 2026*

43. On the same day, the same Product was available on Amazon for $99.99, which is less than the supposedly discounted price Defendant was advertising on its webpage and nowhere near the purported regular price of $240.94:




*Captured January 23, 2026*

44. Plus, a third-party Amazon price tracker, keepa.com, reveals that in the three months prior to January 23, 2026, the price of the Omaha Steaks Deluxe Classic Collection on Amazon was always at or below $109.99—the purportedly discounted price shown on Defendant's website:




*Captured January 23, 2026*

45. Also, Google Shopping data shows that Omaha Steaks Products are consistently available across the web for prices well below Defendant's listed regular prices. For example, below are the listings for the first two "Best Sellers" listed for the first three Product categories appearing on www.omahasteaks.com. As shown, each shows a purported regular price (in strikethrough format) alongside a purported discounted price:










*Captured January 24, 2026*

46. For each "Best Seller" Product shown above, Google Shopping data, which shows the "typical" price for Products "based on stores across the web over the past 12 months," shows the Product is consistently available across the web for prices at or near Defendant's listed discount prices and nowhere near Defendant's listed regular prices.

| **Product** | **Omaha Steak's Advertised Regular Price (1/24/26)** | **Omaha Steak's Advertised Sale Price (1/24/26)** | **Google Shopping Typical Price (12 months preceding 1/24/26)** |
|---|---|---|---|
| Deluxe Sirloin Pack | $247.94 | $129.99 | Typically $130 |
| Premium Protein Favorites | $320.93 | $159.99 | Typically $160 |
| Heartland Signature Steaks Pack | $474.95 | $239.99 | Typically $236 |
| Butcher's Cut Filet Mignons | $194.99 | $99.99 | Typically $97-$105 |
| Family Seafood Favorites | $309.96 | $154.96 | Typically $155 |
| Faroe Island Salmon Filets | $79.99 | $44.99 | Typically $40-$45 |

47. In short, to the extent some of Defendant's Products may be available from third-party websites and sellers, the prices are for less than the purported regular prices that Defendant's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

48. Moreover, regardless of third-party websites' and retailers' prices, Omaha Steaks Products are primarily sold through Defendant's branded website, www.omahasteaks.com. If consumers are searching for Omaha Steaks Products, they will go to Defendant's website. For example, if a consumer Googles "Omaha Steaks ribeye," the first sponsored and unsponsored result

leads to www.omahasteaks.com. So, because the Omaha Steaks Products are most commonly sold on Defendant's website, they are most commonly sold for the discounted prices available on Defendant's website.

49. Moreover, as discussed above, Omaha Steaks Products are available on Amazon—one of the world's largest retailers of consumer goods—for far lower prices than Defendant's listed regular prices. Thus, between sales on Defendant's website and Amazon, the Products routinely and predominantly sell for prices below Defendant's purported regular prices, and the listed regular prices are not the prevailing market rates.

**C. Defendant's advertisements are unfair, deceptive, and unlawful.**

50. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

51. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

52. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

53. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

54. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

55. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D. Defendant's advertisements harm consumers.**

56. Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

57. Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

58. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

59. Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

60. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

61. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. Also, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

**E. Plaintiff was misled by Defendant's misrepresentations.**

62. Plaintiff was misled by Defendant's false and misleading advertising.

63. On December 7, 2025, Mr. Cohen purchased an Omaha Steaks Premier Gift + Free Shipping & Burgers from www.omahasteaks.com. At the time of the purchase, Defendant was offering a heavy discount off of the purported regular price on the Omaha Steaks Premier Gift + Free Shipping & Burgers. Before tax and shipping, Defendant listed the Product with a discount price of $149.99.[5] Here is his order confirmation.

---

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

[5] Mr. Cohen also utilized a "Joyfuyl30" discount code available for new customers that further discounted the Product by another $30.00.



**Premier Gift + FREE Shipping & Burgers**
8 total item(s) | #79697

QTY: 1 | $149.99

Combo contains substitution*

- .#p12 Boneless Pork Chops4/5oz
- 4 (4 oz.) Air-Chilled Boneless Chicken Breasts
- 4 (4 oz.) Omaha Steaks Burgers
- 1 (3 oz.) Omaha Steaks Seasoning
- 4 (6 oz.) PureGround® Filet Mignon Burgers
- 4 (3.81 oz.) Individual Scalloped Potatoes
- 4 (5 oz.) Butcher's Cut Filet Mignons
- 4 (3 oz.) Gourmet Jumbo Franks

64. When Mr. Cohen purchased an Omaha Steaks Premier Gift + Free Shipping & Burgers from www.omahasteaks.com, Defendant was advertising a "50% OFF SITEWIDE" Promotion, and the advertised discount was presented throughout the purchasing process in substantially the same manner described above:




*Captured December 7, 2025*

65. Mr. Cohen made this purchase while living in Hercules, California. Mr. Cohen saw and relied on the representations on Defendant's website that he was purchasing a Product with a particular value and/or market price and that he was receiving a price reduction. He would not have purchased the Product if he knew that Defendant's Product was not discounted as advertised, that he was not receiving a Product with the advertised value and/or market price, and that he was not receiving the advertised discount.

66. Prior to making his purchase, Mr. Cohen reviewed Defendant's website and saw that Defendant was advertising a substantial, time-limited discount. Mr. Cohen read and relied on the representations (like those shown above) on Defendant's website, including that the Product had the regular prices listed on the website in strikethrough font, but was being offered at a discounted sale price from the regular price, and that the sale was time-limited. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Product he was purchasing at the published regular prices (shown in strikethrough font), that this regular price was the prevailing price and market value of the Product that he was buying, that he was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited time promotion), and that the Product would go back to retailing for the published regular prices when the promotion ended. He would not have made the purchase if he had known that the Product was not discounted as advertised, and that he would not be receiving the advertised discount.

67. In reality, as explained above, Defendant's Products, including the Product that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Product that Plaintiff purchased at the purported regular prices, and the Product was not discounted as advertised. Plus, the sale was not limited time—Defendant's Products are regularly on sale.

68. Plaintiff faces an imminent threat of future harm. He would purchase additional Omaha Steaks Products in the future if he could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were

truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while he could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so he cannot purchase the Products that he would like to purchase.

**F. Defendant breached its contract with and warranties to Plaintiff and the putative Class.**

69. When Plaintiff, and other members of the putative Class, purchased and paid for Omaha Steaks Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

70. Defendant's advertisements on its website list the market value of the items that Defendant promised to provide (which, for Plaintiff, are detailed above). Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and the putative Class.

71. Defendant also warranted that the regular price and market value of the Product Plaintiff purchased was the advertised list price and warranted that Plaintiff was receiving a specific discount on the Product.

72. The regular price and market value of the items Plaintiff and putative Class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and promises relating to the goods.

73. Plaintiff and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

74. Defendant breached its contract by failing to provide Plaintiff and other members of the putative Class with Products that have a regular price and market value equal to the regular price

displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**G. No adequate remedy at law.**

75. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

76. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.

77. In addition, to obtain a full refund as damages, Plaintiff must show that the Products he bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that he would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

78. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

79. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if he could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or

deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Omaha Steaks Products he would like to purchase.

**V. Class Action Allegations.**

80. Plaintiff brings the asserted claims on behalf of the proposed Class:

- California Class: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Products that were advertised at a discount on Defendant's website.

81. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

82. The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class members. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

83. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed Class.

***Typicality & Adequacy***

84. Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased an Omaha Steak's Product advertised at a discount. There are no conflicts of interest between Plaintiff and the Class.

***Superiority***

85. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.

### (By Plaintiff and the California Class)

86. Plaintiff incorporates each and every factual allegation set forth above.

87. Plaintiff brings this cause of action on behalf of himself and members of the California Class.

88. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

89. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

90. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (e.g., $70) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the time-limited discount went into effect).

91. The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in

question), because there is consistently a heavily advertised promotion ongoing that entitles consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements indicating that its discounts are limited in time are false and misleading too.

92. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

93. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Product. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

94. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Products).

95. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

96. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

97. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund

and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action:</u>**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Class)**

98. Plaintiff incorporates each and every factual allegation set forth above.

99. Plaintiff brings this cause of action on behalf of himself and members of the California Class.

100. Plaintiff and the California Class are "consumers," as the term is defined by California Civil Code § 1761(d).

101. Plaintiff and the California Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

102. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

103. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

104. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

105. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for its Products.

106. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

107. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (e.g., beginning of "School Year") when in fact Defendant has ongoing sales.

108. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

109. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Product. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

110. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

111. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class.

112. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

113. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the California Class, seeks injunctive relief.

114. CLRA § 1782 NOTICE. On January 27, 2026, a CLRA demand letter on behalf of Mr. Cohen was sent to Defendant's Nebraska headquarters and registered agent via certified mail. The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct

the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt of the notice letter, Plaintiff and the California Class will seek all monetary relief allowed under the CLRA.

115. The CLRA venue declaration is attached.

**<u>Third Cause of Action:</u>**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Class)**

116. Plaintiff incorporates each and every factual allegation set forth above.

117. Plaintiff brings this cause of action on behalf of himself and members of the California Class.

118. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

119. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, 16 C.F.R. § 233.2.

***The Deceptive Prong***

120. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

121. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

122. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

123. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

124. Defendant violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

125. The harm to Plaintiff and the California Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

126. Plaintiff and the California Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

127. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

128. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Product. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

129. In addition, Class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Products).

130. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class members.

131. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the

discounts they were promised, and received Products with market values lower than the promised market values.

132. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiff and the California Class)**

133. Plaintiff incorporates each and every factual allegation set forth above.

134. Plaintiff brings this cause of action on behalf of himself and the California Class.

135. Plaintiff and Class members entered into contracts with Omaha Steaks when they placed orders to purchase Products.

136. The contracts provided that Plaintiff and Class members would pay Omaha Steaks for the Products ordered.

137. The contracts further required that Omaha Steaks provide Plaintiff and Class members with Products that have a market value equal to the advertised list prices. They also required that Omaha Steaks provide Plaintiff and Class members with the discount advertised. These were specific and material terms of the contract.

138. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

139. Plaintiff and Class members paid Omaha Steaks for the Products they ordered, and satisfied all other conditions of their contracts.

140. Omaha Steaks breached the contracts with Plaintiff and Class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. Omaha Steaks did not provide the discount that Omaha Steaks had promised.

141. Plaintiff provided Defendant with notice of this breach, by mailing notice letters to Defendant's registered agent and its Omaha headquarters on January 27, 2026.

142. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

143. For the breach of contract claims, Plaintiff seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other Class members as a result of Defendant's unlawful conduct.

**<u>Fifth Cause of Action:</u>**

**Breach of Express Warranty**

**(By Plaintiff and the California Class)**

144. Plaintiff incorporates each and every factual allegation set forth above.

145. Plaintiff brings this cause of action on behalf of himself and the California Class.

146. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

147. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

148. In fact, the Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

149. Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and its Nebraska headquarters on January 27, 2026.

150. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

151. For his breach of express warranty claim, Plaintiff seek all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other Class members as a result of Defendant's unlawful conduct.

**<u>Sixth Cause of Action:</u>**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

152. Plaintiff incorporates paragraphs 1-68, 75-79.

153. Plaintiff brings this cause of action in the alternative to his Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of himself and the California Class.

154. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase the Products and to pay a price premium for these Products.

155. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

156. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

157. Plaintiff and the Class seek restitution, and in the alternative, rescission.

158. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Seventh Cause of Action:</u>**

**Negligent Misrepresentation**

**(By Plaintiff and the California Class)**

159. Plaintiff incorporates each and every factual allegation set forth above.

160. Plaintiff brings this cause of action on behalf of himself and members of the California Class.

161. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

162. These representations were false.

163. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

164. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

165. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

166. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

167. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

168. For the negligent misrepresentation claim, Plaintiff seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

## Eighth Cause of Action:

## Intentional Misrepresentation

## (By Plaintiff and the California Class)

169. Plaintiff incorporates each and every factual allegation set forth above.

170. Plaintiff brings this cause of action on behalf of himself and members of the California Class.

171. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

172. These representations were false.

173. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

174. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

175. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

176. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

177. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

178. For the intentional misrepresentation claim, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

## VII. Relief.

179. Plaintiff seeks the following relief for himself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

180. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: February 3, 2026

Respectfully submitted,

By: */s/ Richard Lyon*
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*